IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BONNIE SUE THARPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2: 04cv1048 |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Bonnie Sue Tharpe ["Tharpe"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2004). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be REVERSED and REMANDED.

## I.    FACTS AND PROCEDURAL HISTORY

Tharpe claims that she became disabled on 25 August 1995 due to a hematological condition in her left leg (R. 81) that causes her severe pain and swelling, which in turn forces her to elevate her leg above heart level three to four times a day for 30 minutes or more each time (R. 39). Consequently, she cannot "sit or walk for long periods of time" (R. 81). Prior to her alleged onset date, Tharpe, who has a ninth-grade education and obtained a GED, was employed as a "line operator" in a latex factory (R. 85). Her past relevant employment also includes driving an escort vehicle for her ex-husband's mobile home transport company (R.

47, 52).

Tharpe applied for Disability Insurance Benefits and Supplemental Security Income in March 2001 (R. 19, 72-74, 240-42).  Her application was denied initially, and a hearing before Administrative Law Judge ["ALJ"] Arthur J. Shultz resulted in an unfavorable decision (R. 16-25).  The Social Security Administration's ["SSA"] Appeals Council ["AC"] denied her request for review (R. 10-12).  Thus, the ALJ's opinion became the final decision of the Commissioner, and Tharpe filed this timely lawsuit (Doc. # 1).

## II.    STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[1]  This is true despite the existence

---

[1]In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d

227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner

followed the appropriate legal standards in deciding a claim for benefits or that the legal

conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).


### III.   DISCUSSION

*A.     Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must

prove that she is disabled, which means that she is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2004); *see also*

20 C.F.R. §§ 404.1512(a), 416.912(a) (2004).

The regulations governing disability determinations provide a five-step sequential

evaluation process that the ALJ must follow to determine whether a claimant has proven that

he is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Ambers v. Heckler*, 736 F.2d

1467, 1469 (11th Cir. 1984); *Williams v. Barnhart*, 186 F. Supp. 2d 1192, 1195 (M.D. Ala.

2002).  If the claimant is not currently engaged in substantial gainful activity, the ALJ must

determine whether she suffers from a severe impairment (i.e., a medically determinable

condition that significantly limits the claimant's ability to perform basic work-related

activities) that has lasted or is expected to last 12 months or more.  §§ 404.1509, 416.909,

3

404.1520(a)(4)(I)-(ii), 416.920(a)(4)(I)-(ii).  If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled.  §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [his or her] limitations."  §§ 404.1545(a), 416.945(a).  Considering her RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of her past relevant work.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

**B.    *Application of the Standard: the ALJ's Findings***

After discussing the legal standards and the evidence in the record, the ALJ made the following findings:

> 1.    Tharpe meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(I) of the Social Security Act and remained insured for benefits only through December 31, 2000.

> 2.    Tharpe has not engaged in substantial gainful activity since the alleged onset of disability.

4

3.     Tharpe's congenital cavernous hemangioma of the left leg is a severe impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1521 and 416.921).

4.     This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. [sic]

5.     Tharpe's allegations regarding her limitations are not fully credible for the reasons set forth in the the decision.

6.     The ALJ carefully considered all of the medical opinions in the record regarding the severity of the Tharpe's impairment (20 CFR §§ 404.1527 and 416.927).

7.     Tharpe has the residual functional capacity to perform a reduced range of light work and a full range of sedentary work activities.  She can lift and/or carry 20 pounds occasionally and ten pounds frequently.  She can sit six hours in an eight-hour workday, but can stand and/or walk no more than two hours in an eight-hour workday.  She can never climb ladders and/or ropes, kneel, crouch, or crawl.  She can occasionally balance and stoop.  Tharpe should avoid hazards, such as moving machinery or heights, and have limited exposure to fumes, odors, dust, gases, and smoke.

8.     Tharpe can return to her past relevant work as escort driver since that job does not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9.     Tharpe was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)).

(R. 24-25).  Thus, Tharpe failed at step four because the ALJ determined that she could return to past relevant work.

5

Tharpe disagrees and argues, generally, that the Commissioner's decision is not supported by substantial evidence in the record (Doc. # 11).  Specifically, Tharpe contends that the ALJ erred by failing to:

1.   give proper consideration to her limited ability to stand and sit, as noted in the opinions of consultative examining physicians, when assessing her RFC;

2.   evaluate her subjective complaints properly;

3.   assess medical source opinions properly; and

4.   develop her medical record fully.

(Doc. # 11, p. 1).


**C.   *RFC Assessment***

"The residual functional capacity is an assessment, based upon all the relevant evidence, of a claimant's remaining ability to do work despite his [or her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a); *see also* § 416.945(a)).  Referring to the claimant, the regulations state:

> In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (*See* § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (*See* § 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (*See* § 404.1513) We will also

6

> consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (*See* paragraph (e) of this section and § 404.1529.)

20 C.F.R. § 404.1545(a)(3).

Among the ALJ's conclusions set forth in his RFC assessment was his opinion that Tharpe can "sit six hours in an eight-hour workday, but can stand and/or walk no more than two hours in an eight-hour workday" (R. 24).  Considering his view of the medical opinions in the record and the absence of other evidence that could reasonably support this statement, the ALJ's conclusion is arbitrary.

Tharpe was seen on two occasions by one-time consultative examiners, both of whom expressed opinions regarding her relevant limitations.   In June 2001, Dr. Richard L. Bendinger Jr. ["Dr. Bendinger"] observed

> marked stasis changes in the lower extremities with scattered varicosities, especially in the lower left extremities.  The patient has a large scar up from the left knee up to the left hip with approximately 3-4 cm of marked varicosities/spider veins surrounding the scar on both sides.  This area is very tender to palpation.  She also has some calf tenderness in her left leg and some thigh tenderness.  The tenderness in her left extremity extends from the left buttock area all the way down to the left knee.

(R. 223).[2]  In addition, Dr. Bendinger noted that her lower left leg was somewhat swollen (R.

---

[2]"Stasis" is defined as "[stagnation or stoppage of the flow of blood in a tissue or organ with a resulting distention."  5 ATTORNEY'S DICTIONARY OF MEDICINE S-283 (3d ed. 2004).

224).  He continued,

> Based on my medical findings, the patient's ability to do work related activities is primarily limited by the chronic pain in her left hip and thigh and the buttock area.  This patient would have a problem doing heavy physical labor.  Handling objects, hearing and speaking would be unimpaired.  *Traveling would only be impaired due to her increased risk for blood clots*.

(R. 225) (emphasis added).  He then concluded,

> This is a very curious case.  The patient has what appears to be an unusual venous malformation involving the left buttock, left thigh and left lower extremity.  She previously had unsuccessful surgery on this area.  In addition, she is on chronic Coumadin due to her risk of pulmonary embolus and blood clots.  This would tend to limit the patient's activities somewhat, especially her chronic lifting and straining.

(R. 225).  He did not note any specific limitations on Tharpe's ability to stand or walk.

In briefly summing up Dr. Bendinger's conclusions, the ALJ stated that

> [i]t was the examiner's opinion that the chronic pain in her left hip and thigh would primarily limit the claimant's ability to do work related activities.  She would have "...a problem doing heavy physical labor."  The claimant's ability to lift and/or strain would be limited due to her susceptibility to blood clots.

(R. 21).

Thus, the ALJ overlooked Dr. Bendinger's observation regarding Tharpe's ability to travel, which he found to be limited due to her risk of blood clots (R. 225).  His oversight is significant because the hypothetical question the ALJ posed to the vocational examiner ["VE"] at Tharpe's hearing assumed the ability, *inter alia*, to "sit six hours in an eight-hour day"  (R. 55).  Given the ALJ's assumptions, the VE concluded that the hypothetical

claimant could perform the work requirements of an "escort-vehicle driver," which the VE had earlier testified was a "sedentary, unskilled job." *Id.*

It seems clear to the court that a limitation on Tharpe's ability to travel due to the risk of blood clots would seriously affect her ability to maintain a full-time job driving a vehicle, sometimes for long distances.[3]   Affording Dr. Bendinger's opinion the common sense interpretation to which it is entitled, it is apparent that he viewed Tharpe's ability to sit as limited, though he did not clarify the scope of the limitation.

This conclusion is supported by the opinion of the other consultative examiner, Dr. William D. King ["Dr. King"], who stated that Tharpe could sit, stand and/or walk no more than "5-10 minutes at a time" (R. 233).  Closely echoing Dr. Bendinger, Dr. King specifically concluded that "[t]raveling would be impaired in that she can not drive except for very short distances" (R. 233).

The ALJ expressly discredited Dr. King's narrative conclusions, however, as well as his functional assessment, because he found that they were not consistent with Dr. King's own examination notes.

> Dr. King completed a residual functional capacity assessment indicating the claimant would be unable to sit, stand, or walk more than five to ten minutes at a time.  His findings during examination, however, were that the claimant's gait was normal, heel and toe walking was normal, and squatting was unremarkable.  Straight leg raises were negative and the lower

---

[3]That Tharpe's medication may reduce the risk of blood clots and apparently has been effective (Doc. # 12, pp. 8-9) does not, contrary to the Commissioner's suggestion, suggest that sitting or standing for long periods of time does not increase the risk of a blood clot forming.

extremities, hips, knees, and ankles all had full range of motion.

(R. 23).

Unlike his summary of Dr. Bendinger's opinion, the ALJ's review of Dr. King's examination and conclusions is accurate; however, the ALJ's rationale for discrediting Dr. King's opinion is illogical. Tharpe's ability to walk 20 feet, squat and move her lower extremities during a brief examination, while at least arguably probative of her ability to walk, simply is not dispositive of her ability to sit or stand for extended periods and therefore does not conflict with the conclusion that she can only do so only briefly. *See Lewis*, 125 F.3d at 1441 (questioning the relevancy of a "graded exercise test" of limited duration conducted in the course of a one-time examination).

Nevertheless, the ALJ was at least partly correct. Dr. King's specific temporal limitations are not supported by his examination notes or other medical evidence in the record,[4] which offers very little beyond simple diagnoses and explanations of the diagnostic and surgical procedures performed. Of course, the same is true of the temporal limitations proffered by the ALJ after concluding, apparently, that he was better posited than Dr. King to opine on such matters.[5]

---

[4]They do reflect Dr. King's notes regarding Tharpe's subjective complaints.

[5]Disability evaluators, whose jobs require that they become at least somewhat familiar with a wide range of medical conditions, for that very reason, should exercise extreme caution to avoid hazarding a diagnosis or prognosis. They are neither legally qualified nor paid to do so. *See Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992) (describing the ALJ's medical opinion as "uninformed" and noting the impropriety of the ALJ substituting his own opinion for those of the claimant's treating physicians); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (finding that "the ALJ improperly substituted his conclusion that appellant 'appeared moderately

While the burden is on the claimant to prove that she is disabled (and, accordingly, that she cannot return to previous work), *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990), the ALJ's conclusions, including his RFC assessment, must be supported nonetheless by substantial evidence in the record.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (noting that the courts will not disturb the ALJ's RFC determination when it is supported by substantial evidence); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (affirming the ALJ's opinion upon finding, *inter alia*, that his RFC assessment was based on substantial evidence).

The record in this case suffers from a dearth of medical evidence, and it is not clear to the court how the ALJ could have drawn any conclusions regarding Tharpe's functional abilities without accurately relying on the opinions of the consultative examiners.  By disregarding and misconstruing these opinions, the ALJ left himself without an acceptable basis for drawing an alternate conclusion.[6]  Having done so nevertheless, he leaves the court

---

handicapped in her gait' for the medical evidence presented" and citing to *Goodley v. Harris*, 608 F.2d 234, 236 n.1 (5th Cir. 1979), for the proposition that doing so may constitute reversible error).  Never is this more important than when faced with a condition practicing physicians have struggled to describe.  Characterized by Dr. Bendinger as "unusual" (R. 225), Tharpe's condition has been variously diagnosed or described as a "large venous malformation" (R. 101-02, 198), "femoral vein thrombosis" (R. 229), "small congenital cutaneous hemangioma" (R. 229), "a thrombosed and calcified vein" and "several dilated venous structures. . . .compatible with a cavernous hemangioma" (R. 135) and "chronic superficial varicosities" (R. 233).

[6]Other courts in the Eleventh Circuit suggest that an ALJ's RFC assessment must be supported by an equivalent assessment completed by a physician.  *Thomason v. Barnhart*, 344 F. Supp. 2d 1326, 1329 (N.D. Ala. 2004) (including within a list of errors the absence of a "formal assessment of record of plaintiff's Residual Functional Capacity [RFC] either by examining or non-examining physicians . . ..");  *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010-11 (S.D. Ala. 2003) ("The undersigned finds it unclear how the ALJ found plaintiff could meet the threshold physical

no option but to reverse the Commissioner's decision and remand this case for further proceedings to properly assess Tharpe's RFC and resume the sequential evaluation.[7]

## D.      *Subjective Complaints of Pain*

The two-part test established by the Court of Appeals for the purpose of evaluating a claimant's subjective complaints requires the Commissioner to first determine whether evidence of an underlying medical condition exists and, if so, whether either "objective medical evidence . . . confirms the severity of the alleged pain arising from that condition or . . . the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223

---

requirements of medium work, in absence of a physical capacities evaluation ("PCE") completed by a treating or examining physician . . . .."). With no opinion from the Court of Appeals addressing this narrow issue, the court declines to impose such a strict requirement.  It is quite possible that an ALJ's RFC assessment is supported by a record that contains no formal RFC assessment or equivalent from a medical source.  While such an assessment may be helpful, it is not yet required.

[7]On remand, the Commissioner must either accept Dr. King's limitations or, with legitimate reasons for discounting them, supplement the record to provide support for different conclusions. Although the Commissioner is better qualified to determine the best way to accomplish this, the court suggests, in the first place, recontacting Drs. Bendinger and King to allow them to expound upon and explain the rationale for their conclusions.  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (stating that when the medical evidence is insufficient, "[w]e will first recontact your . . . medical source to determine whether the additional information is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques").   In addition, or alternatively, the Commissioner should consider retaining a medical expert to offer additional insight.  20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) . . . .").

(11th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529, 416.929.  No weight need be given to subjective complaints that do not satisfy the pain standard.  *See*, *e.g.*, **Butler v. Barnhart**, 347 F. Supp. 2d 1116, 1123 (M.D. Ala. 2003).  However, the ALJ must provide "explicit and adequate" reasons for discrediting the plaintiff's complaints.  **Wilson v. Barnhart**, 284 F.3d 1219, 1225 (11th Cir. 2002).

Tharpe offers some intriguing ideas in support of her view that the ALJ's application of the pain standard was erroneous.[8]  Regardless, the court finds that the ALJ did not err.

After correctly reciting the pain standard, the ALJ concluded that while Tharpe satisfied the first requirement, objective evidence in support of her allegations was nonetheless lacking (R. 22-23).  *See* **Edwards v. Sullivan**, 937 F.2d 580, 584 (11th Cir. 1991) (upholding the ALJ's decision not to credit the claimant's subjective complaints of pain when "there were no 'clinical findings indicative of a[n] . . . impairment of the *degree of severity described by [the claimant]*" (emphasis added)).

The court has already noted the deficiency of Tharpe's medical records, which,

---

[8]For example, Tharpe characterizes Dr. Bendinger's opinion that her "ability to do work related activities is primarily limited by the chronic pain in her left hip and thigh and buttock area" as objective "psychological evidence" supporting her subjective complaints (Doc. # 11, p. 9).

In addition, Tharpe misquotes the ALJ's opinion.  She contends that he stated that her allegations were "not supported by the objective *medical* evidence of record" (Doc. # 11, p. 8) when, in fact, the word "medical" did not appear in the ALJ's sentence (R. 22).  This misquote is not insignificant because, when applying the pain standard, the ALJ must evaluate all of the evidence, including statements made by non-medical sources.  *See generally*, 20 C.F.R. §§ 404.1529, 416.929.  The significance of this error, which, though perhaps easy to make, can be easily avoided, compels the court to admonish Tharpe and her counsel that the court does not digest such misrepresentations easily, and future occurrences may be met swiftly with burdensome sanctions.

although indicating an occasional prescription for pain medication, suggest neither a pattern of complaints of pain nor any type of independent pain therapy.[9]  In fact, treatment of her broader, underlying condition appears infrequent and sporadic.  Therefore, the ALJ's finding Tharpe's allegation of constant pain ranging from 8-10 on a 10-point scale (R. 39) is unsupported by evidence in the record was reasonable and is supported by substantial evidence.

Based in part on this lack of evidence, the ALJ also questioned Tharpe's credibility, noting that her allegations conflicted with evidence concerning her daily activities, which include household chores, caring for her daughter, occasional shopping and periodic work as a driver (R. 22-23).  In this case, reasonable minds may differ with respect to whether her alleged pain would preclude her from performing daily activities as she described them (R. 39-41, 47, 51-53).

The reasonableness of the ALJ's conclusion, however, precludes this court from disturbing it.  While the ALJ may not deny disability benefits based solely upon a claimant's ability to perform minimal daily activities, *see Lewis*, 125 F.3d at 1441, contrary to what Tharpe suggests, an ALJ *must* consider a claimant's daily activities when making a

---

[9]Tharpe did complain of "severe" pain in her left "upper thigh" on 20 March 2001 (R. 207) and 24 May 2001 (R. 198).  She also has received occasional prescriptions for Lortab and/or Tylenol 3, but her medical records foreclose any claim that she is continuously taking medication.  The insight they offer is limited to the following discrete time periods: 19 June to 22 August 1998, 25 January to 18 July 2000, and 12 December 2000 to 10 May 2001 (R. 5).  Although Tharpe noted the cost of medications as a possible factor affecting her ability to take medication (R. 43), she acknowledged as well that she was medically insured until her divorce in May 1999 (R. 42, 46) and that her ex-husband continues to pay for any medications she may need (R. 46).

14

credibility determination.  *Johnson v. Barnhart*, 138 Fed. Appx. 266, 169-70 (11th Cir. 2005) (citing Soc. Sec. Rul. 96-7p).

Therefore, the ALJ's evaluation of Tharpe's subjective complaints was proper.


**E.    *Remaining Arguments***

Tharpe also contends that the ALJ erred by not discussing the opinion of Dr. Wade C. Lamberth, Jr.,[10] and by not obtaining medical evidence the existence of which was suggested by Tharpe's testimony at her administrative hearing.  Neither of these arguments has merit.

Dr. Lamberth was a one-time examining physician who saw Tharpe in the later part of 1991, four years prior to her alleged disability onset date.  Conceivably, records extending that far back may be crucial to a full understanding of a claimant's condition, and in appropriate circumstances, the ALJ's apparent oversight might have constituted error.  In this case, however, Tharpe's visit to Dr. Lamberth preceded a seven-year period during which Tharpe apparently received no medical treatment.  Dr. Lamberth's opinion is therefore stale and largely irrelevant to Tharpe's current or even recent condition, and the ALJ was under no obligation to consider it.  Moreover, Dr. Lamberth's "impression" was not conclusive, and his recommendations suggest that he viewed her condition as temporary (R. 229-30).

---

[10]In addition, Tharpe contends that the ALJ erred by failing to note specifically the weight he assigned to Dr. Bendinger's opinion.  It is clear from the ALJ's opinion, however, that although he misconstrued Dr. Bendinger's opinion, he nonetheless gave it controlling weight.

Tharpe also contends that the ALJ failed to develop her medical history fully because he did not obtain medical records she mentioned in her testimony but did not offer into evidence. Although Tharpe is correct that the ALJ has a duty to develop her medical record, that duty requires the SSA merely to make "every reasonable effort to *help* . . . get medical reports from . . . medical sources when [the claimant] give[s] . . . permission to request the reports." 20 C.F.R. §§ 404.1512(d), 416.912(d).

Tharpe, who was represented by counsel throughout the administrative proceedings, misconstrues the duty as a "duty to obtain" (Doc. # 11, p. 13), but the regulations, which Tharpe quotes in her brief, specifically state that the SSA will make one "*request*" and one "*followup request*." *Id.* (emphasis added). Tharpe neither contends, nor offers evidence, that the SSA failed to make such requests. Nor does she claim to have given the requisite permission.

Furthermore, Tharpe retains the primary responsibility for obtaining medical records. 20 C.F.R. §§ 404.1512(c), 416.912(c). Yet, at her administrative hearing, when asked whether she had any additional evidence to offer, Tharpe's attorney replied, "No, sir. The only one I have, you've already got so no additional" [sic] (R. 34). The alleged missing evidence also was not among the additional evidence Tharpe submitted with her request for the AC to review the ALJ's decision (R. 9).

Finally, Tharpe failed to allege or explain the substantive content of the missing medical records or how that information would have supported, conflicted with, explained or clarified her testimony or the other evidence, and she has not submitted the missing

16

medical records to this court to allow it to draw the relevant conclusions.  Thus, she has failed to demonstrate how the ALJ's alleged error resulted in prejudice to her.  ***Kilcrease v. Barnhart***, 347 F. Supp. 2d 1157, 1162 (M.D. Ala. 2004) (finding that the claimant failed to demonstrate that the ALJ's failure to obtain medical records was error when she did not show "why it would be relevant for [the ALJ] to do so or what difference it would have made had he done so"); *see also* ***Kelley v. Heckler***, 761 F.2d 1538, 1540 (11th Cir. 1985) (requiring a showing of prejudice before finding that the administrative hearing was unfair).


## IV.   CONCLUSION

Accordingly, it is hereby

ORDERED that the decision of the Commissioner be REVERSED and REMANDED for further proceedings not inconsistent with this opinion.  Specifically, the Commissioner is required to re-evaluate Tharpe's residual functional capacity and develop a record in support thereof.

DONE this 18th day of October, 2005.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE